**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO.  12-327** |
| | : | |
| **WILLIAM V. HLUSHMANUK,** | : | |
| a/k/a "Bill Le" | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through undersigned counsel, respectfully submits this memorandum in connection with the sentencing hearing scheduled in this criminal matter.

## I.      INTRODUCTION

On February 5, 2013, William V. Hlushmanuk pleaded guilty to counts 21 and 22 of the indictment, which charged him with health care fraud, in violation of 18 U.S.C. § 1347, and conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, respectively.  The defendant is scheduled to be sentenced on May 9, 2013, before the Honorable John R. Padova. The advisory custodial guideline range is between 100 and 125 months.

For the reasons set forth below, the government recommends that the Court adopt the calculations of the United States Probation Officer, with the exception of the enhancement for role in the offense.  The government objects to the 4 point enhancement and contends that the role enhancement should only be for 2 points.  Should the Court accept the government's recommendation, the defendant's guideline range will be 84-105 months.

## II.     FACTS OF THE CASE

The defendant conspired with Jacqueline Diana and others to defraud Medicare through a systematic scheme.  In 2006, the defendant sought to open and operate a private ambulance transport company.  In June 2006, the Pennsylvania Department of Health (the "DOH")

informed the defendant that he and Diana, who is his now-estranged wife, were barred from the ambulance industry because of the defendant's criminal record and prior regulatory violations they committed.  Shortly thereafter, the defendant agreed to pay Roman Bayger, an acquaintance, to act as a straw owner of an ambulance company, which the defendant named Starcare Ambulance Inc. ("Starcare").

From Starcare's inception, the defendant was involved in almost every aspect of its operations.  The defendant hired and fired employees, recruited patients, and signed numerous documents, including leases, bills, and ambulance "trip sheets."  At the defendant's direction, Diana performed all of Starcare's billing.  Medicare payments to Starcare were made into bank accounts controlled by the defendant and Diana.

Starcare had almost no legitimate business.  Under Medicare Part B regulations, only claims that are medically necessary are eligible for reimbursement.  The defendant knowingly recruited patients whom he knew were ambulatory and directed his employees to transport these patients by ambulance and private vehicle.  The defendant also directed his employees to falsify trip sheets and other paperwork to conceal the fraud.

At its peak, Starcare had over 30 patients, each of whom was transported six times per week.  In total, during the period alleged in the indictment, Starcare received approximately $5.4 million from Medicare.  Forensic financial analysis revealed that most of the expenditures from Starcare's bank account were for the defendant's personal use, including purchasing several customized vehicles and motorcycles, paying for vacations, and making cash withdrawals to support his cocaine addiction.  The defendant also paid salaries from Starcare's ill-gotten gains to himself, Diana, and several family members.  By contrast, Starcare staff received generally received small, hourly wages, and their pay-checks frequently bounced.

III.   **SENTENCING GUIDELINES CALCULATION**

The United States Probation Office has concluded that the Offense Level is 27 and the Criminal History Category is IV, resulting in an advisory guideline range of 100 to 125 months in prison.  The government has only one objection.

The Presentence Report concludes that the defendant was an organizer or leader of a criminal activity that involved at least five participants and was otherwise extensive, which results in a 4 level upward adjustment under U.S.S.G. § 3B1.1(a).  In the defendant's plea agreement, however, the parties stipulated only that the defendant acted as an organizer or leader of a criminal activity, which results only in a 2 level upward adjustment under U.S.S.G. § 3B1.1(c).

The parties stipulated to the lower adjustment for two reasons.  First, the parties agreed that the defendant supervised fewer than five participants because only the defendant and his co-conspirators had criminal culpability.  *See* U.S.S.G. § 3B1.1(a) n.1 (2012) ("A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted.").  Second, the parties agreed that the fraud was not "otherwise extensive" because the defendant operated only one company which, at its peak, transported only thirty patients.

The Government otherwise accepts the findings of the Presentence Report.  If the court accepts the stipulated role adjustment of 2 levels rather than the 4 levels advocated by the PSR, although the parties' agreement is not binding on the court, the resulting advisory guideline range is 84-105 months.

The Court may impose the following statutory maximum penalties: Count 21, health care fraud, 10 years of imprisonment, a 3 year term of supervised release, a $250,000 fine, and a $100 special assessment; Count 22, conspiracy to commit health care fraud, 10 years of imprisonment,

a 3 year term of supervised release, a $250,000 fine, and a $100 special assessment.  Therefore,

the total maximum penalty for these two counts is: 20 years of imprisonment, a 3 year term of

supervised release, a $500,000 fine, and a $200 special assessment.  The defendant shall be

jointly and severally liable for restitution to Medicare in the amount of $5,443,315.72.  The

defendant agreed to forfeiture as provided in Attachment A to his plea agreement.

As set forth in paragraph 11 of his plea agreement, the defendant agrees not to seek a

downward departure or variance from the non-binding, stipulated guideline range of 84-105

months.

## IV.     GOVERNMENT'S RECOMMENDATIONS CONCERNING SENTENCING

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a)

suggests that the most appropriate sentence is one within the advisory guideline range of 84-105

months.

### A.     Background

The United States Supreme Court has declared:  "As a matter of administration and to

secure nationwide consistency, the Guidelines should be the starting point and the initial

benchmark."  *Gall v. United States*, 128 S. Ct. 586, 596 (2007).  Thus, the Sentencing Guidelines

remain an indispensable resource for assuring appropriate and uniform punishment for federal

criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section

3553.  Those factors include: (1) the nature and circumstances of the offense and the history and

characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness

of the offense, to promote respect for the law, and to provide just punishment for the offense; (3)

the need to afford adequate deterrence to criminal conduct, and to protect the public from further

crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553.

### B.    Application

The relevant 3553 factors will be discussed in turn.

#### 1.    The nature and circumstances of the offense

Health care fraud is a serious offense.  According to the Federal Bureau of Investigation, health care fraud costs the United States $80 billion a year.  *See* Health Care Fraud, *http://www.fbi.gov/about-us/investigate/white_collar/health-care-fraud* (last visited Apr. 18, 2013).  In this case, the defendant enriched himself at the expense of the taxpayers who contribute to the Medicare and Medicaid systems.  Likewise, by stealing from programs that serve the poor and elderly, the defendant increased the cost of providing care to those who need it most.

Moreover, the defendant has admitted that he organized and led this fraudulent scheme. He arranged for a straw owner to serve as Starcare's registered owner with the state and then directed every aspect of its operations, from recruiting walking patients to transporting them in personal vehicles.  The defendant controlled the company's finances, which he used to fuel his extravagant lifestyle and drug addiction.  The defendant's spending was so extensive that, despite the amount of money generated by the scheme, his employees' pay-checks frequently bounced.

**2.      The history and characteristics of the defendant**

As detailed in the Presentence Report, the defendant has an extensive criminal history. The defendant has been engaged in criminal conduct since age 18, when he was convicted of attempted burglary.  Although the defendant falls within Criminal History IV, his 9 points place him at the top of the category.  Moreover, an aggravated assault case in which the defendant is alleged to have pulled Diana out of a vehicle and choked her remains pending in the Philadelphia County Court of Common Pleas.  Nevertheless, the defendant's acceptance of responsibility demonstrates, at least in part, a willingness to move forward and no longer engage in criminal activity.

**3.      The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

A sentence within the guideline range will adequately reflect the seriousness of the offense and promote respect for the law.  The defendant has pled guilty and understands that he must suffer the consequences of his actions.  Those consequences should include a significant prison sentence in addition to restitution and forfeiture.

**4.      The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant**

This case, perhaps even more than the typical criminal case, requires a strong deterrent message.  The Medicare system relies on the honesty and integrity of participating health care providers.  Given the impact that fraud has on the health care system, and the relative simplicity of this scheme, a lengthy period of incarceration is critical to deterring others.  Likewise, the defendant's criminal history and previous involvement in the ambulance field, including his exclusion by the DOH, suggest that a significant prison sentence will be needed to personally deter him.

> **5.      The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner**

There does not appear to be a need for educational or vocational training.

> **6.      The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

Hlushmanuk will be the first of his co-schemers to be sentenced.  His co-schemers, however, have pled guilty to significantly less serious conduct.  Ultimately, the defendant organized the scheme and, more than anyone else, reaped its benefits.  His conduct merits the lengthiest sentence of the three co-schemers.

> **7.      Restitution**

As set forth in the plea agreement, the defendant is responsible for restitution to Medicare in the amount of $5,443,315.72.

## V.      <u>CONCLUSION</u>

For these reasons set forth above, the Government recommends that the Court sentence the defendant to a term of imprisonment within the advisory guideline range.

Respectfully submitted,
ZANE DAVID MEMEGER
United States Attorney


_____/s/_____
ADAM L. Small
DOJ Trial Attorney


_____/s/_____
ANDREA FOULKES
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the _13th__ day of May, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

_____/s/_____

ADAM L. SMALL
DOJ Trial Attorney
615 Chestnut Street
Philadelphia, PA 19106
 202-616-4782
Email: adam.small@usdoj.gov

Dated: _13_ May, 2013.