IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 12-327 |
| | : | |
| v. | : | |
| | : | |
| WILLIAM V. HLUSHMANUK | : | CIVIL ACTION NO. 14-3044 |

## <u>MEMORANDUM</u>

**Padova, J.**                                                    **November 6, 2014**

William Hlushmanuk has filed a pro se Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "§ 2255 Motion"), asking that we vacate his conviction and sentence, which were pursuant to a guilty plea that included an appellate waiver. The Government has filed a Motion to Dismiss the § 2255 Motion, arguing both that Hlushmanuk waived his right to collaterally challenge his conviction and sentence and that enforcement of that waiver will not result in a miscarriage of justice. For the following reasons, we grant the Government's Motion to Dismiss.

## I.      BACKGROUND

The Indictment in this case charged Hlushmanuk with twenty-one counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2; one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1347 and 1349; and one count of false statements relating to health care fraud, in violation of 18 U.S.C. §§ 1035 and 2. The charges stemmed from a scheme in which Hlushmanuk, who owned a private ambulance company called STARCARE, and two co-conspirators defrauded Medicare by billing and collecting reimbursements for ambulance trips for ambulatory patients that were not medically necessary and, thus, were not reimbursable under Medicare guidelines.[1]

---

[1] Medicare regulations provide that Medicare covers nonemergency transportation by

On February 5, 2013, Hlushmanuk pled guilty to Count 21, which was one of the counts of health care fraud, and Count 22, the conspiracy count, and the Government agreed to dismiss the remaining nineteen counts of the Indictment.   In the written Guilty Plea Agreement, Hlushmanuk agreed that, with only limited exceptions, he could neither appeal nor collaterally challenge his conviction or sentence.   Specifically, he agreed as follows:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

(Guilty Plea Agreement ¶ 12 (emphasis added).)   Notwithstanding this waiver, the Guilty Plea Agreement permits Hlushmanuk certain appellate rights.   First, it permits him to file a direct appeal of his sentence if the Government appeals the sentence.   (Id. ¶ 12(a).)   Second, it provides that, even if the Government does not appeal, he may file a direct appeal to raise the following limited claims:   "(1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count . . . ; (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; [or] (3) the sentencing judge . . . imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court."   (Id. ¶ 12(b).)

    We held a change of plea hearing on February 5, 2013.   After questioning Hlushmanuk regarding his willingness to enter into and understanding of the Guilty Plea Agreement, and finding that he was competent to plead, that his guilty plea was voluntary, that there was a factual basis for the guilty plea, and that he understood the charges and his legal rights, we accepted his

---

ambulance if either "the beneficiary is bed-confined, and it is documented that the beneficiary's condition is such that other methods of transportation are contraindicated; or, if his or her medical condition, regardless of bed confinement, is such that transportation by ambulance is medically necessary."   42 C.F.R. § 410.40(d)(1).

guilty plea.  (2/5/13 N.T. at 26-27.)  We sentenced Hlushmanuk on May 14, 2013.  As set forth in the Presentence Report, Hlushmanuk was facing a maximum sentence of twenty years of imprisonment, and his advisory Guideline range was 84-105 months.  We sentenced him to ninety-two months of imprisonment on each of Counts 21 and 22, to run concurrently, along with three years of supervised release, a $200 special assessment, and restitution of $5,443,315.72.  At the sentencing hearing, we also granted the Government's Motion to Dismiss Counts 1-20 and Count 24 of the Indictment.

Hlushmanuk did not file a direct appeal.  On May 26, 2014, he filed the instant *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  He asserts in the Motion that we should not enforce his collateral attack waiver and should vacate his conviction and sentence, because he did not knowingly and voluntarily enter into the guilty plea, his counsel was ineffective, and Count 22 of the Indictment was defective.[2]

## II.    LEGAL STANDARD

The Government has moved to dismiss Hlushmanuk's § 2255 Motion on the ground that he waived his right to collaterally attack his conviction and sentence in his Guilty Plea Agreement. The United States Court of Appeals for the Third Circuit has held that a waiver of appellate or collateral attack rights is enforceable provided that:  (1) it was entered into knowingly and voluntarily; (2) no specific exception set forth in the agreement applies; and (3) enforcement of the waiver would not work a miscarriage of justice.   United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008) (citing United States v. Jackson, 523 F.3d 234, 243-44 (3d Cir. 2008)); see also United

---

[2] Ground One of the § 2255 Motion is an umbrella claim that we should not enforce the waiver because Hlushmanuk's guilty plea was not knowing and voluntary, his counsel was ineffective, and Count 22 of the Indictment is defective.  Grounds Two through Four assert separate claims that the plea was unknowing and involuntary, counsel was ineffective, and Count 22 is defective.

States v. Shedrick, 493 F.3d 292, 297-98 (3d Cir. 2007); United States v. Khattak, 273 F.3d 557, 562-63 (3d Cir. 2001).

To evaluate whether enforcement of a waiver would result in a miscarriage of justice, the Third Circuit has adopted a number of factors that must be considered, including: "'the clarity of the error, its gravity, its character . . . , the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" Khattak, 273 F.3d at 563 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)). While the miscarriage of justice determination is open-ended, the Third Circuit has specifically observed that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [the defendant] from understanding his plea . . . would result in a miscarriage of justice." Shedrick, 493 F.3d at 298. It has similarly noted that "it would constitute a miscarriage of justice to enforce a guilty plea made pursuant to a plea agreement if the defendant should have been permitted to withdraw [the plea]." United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005).

At the same time, circumstances in which an uncorrected error results in a miscarriage of justice are "unusual," Khattak, 273 F.3d at 562, and the "miscarriage of justice" exception must be "'applied sparingly and without undue generosity.'" Wilson, 429 F.3d at 458 (quoting Teeter, 257 F.3d at 26). Indeed, as the Third Circuit has recognized: "'Waiver would be nearly meaningless if it included only those appeals that border on the frivolous . . . . While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded.'" Khattak, 273 F.3d at 562 (quoting United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999)).

## II.     DISCUSSION

### A.   Knowing and Voluntary Waiver

As a threshold issue, we must "consider whether there is record evidence that [Hlushmanuk] knowingly and voluntarily signed the waiver." United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir. 2007).   We look first to the language of the waiver, and then to the plea colloquy. See United States v. Mabry, 536 F.3d 231, 238 (3d Cir. 2008) (citing Gwinnett, 483 F.3d at 203-04).   The language of Hlushmanuk's Guilty Plea Agreement clearly provides that he has waived his right to attack his conviction and sentence on direct appeal or pursuant to 28 U.S.C. § 2255 and that there are only limited exceptions to this waiver, none of which apply here. (Guilty Plea Agreement ¶ 12.)   Moreover, Hlushmanuk signed both the Guilty Plea Agreement and an Acknowledgment of Rights, acknowledging that he understood the terms of the Guilty Plea Agreement (including the appellate and collateral attack waiver), that he had fully discussed the Guilty Plea Agreement with his counsel, and that he understood his right to maintain his plea of not guilty and go to trial.   (Id. ¶ 17; Acknowledgment of Rights ¶¶ 2, 6.)

Prior to accepting Hlushmanuk's guilty plea, we conducted a plea colloquy pursuant to Federal Rule of Criminal Procedure 11(b), which provides in pertinent part as follows:

> **(1)   Advising and Questioning the Defendant.**    Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court.   During this address, the court must inform the defendant of, and determine that the defendant understands . . . .
>
> . . . .
>
>           **(N)**   the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence . . . .

Fed. R. Crim. P. 11(b)(1); see also Gwinnett, 483 F.3d at 204.   During the plea colloquy, we confirmed that Hlushmanuk understood the terms of the Guilty Plea Agreement, including that he

was agreeing to waive any right to appeal, except in very limited circumstances, and we further confirmed that he had discussed the Agreement with his attorney.  (2/5/13 N.T. at 5-10.)   We asked Hlushmanuk whether anyone had coerced him into pleading guilty, and he answered "No, sir."  (Id. at 24.)   We also asked Hlushmanuk whether anyone had made any promises to him that were not contained in the Guilty Plea Agreement to induce his change of plea, and he answered that no one had.  (Id. at 10-11.)   We asked Hlushmanuk if he wanted to ask or say anything to the Court, and he said that he did not.  (Id. at 25-26.)   We also conducted the following colloquy with Hlushmanuk with regard to the waiver:

> THE COURT:   Now, if you went to trial on a not-guilty plea and at that trial you were found guilty, then after that trial you would be able to appeal the guilty verdict to an appellate court, your lawyer could represent you in that appeal, and the appellate court might reverse or throw out the conviction.  Do you understand that?
>
> THE DEFENDANT:   Yes, sir.
>
> THE COURT:   Now, by pleading guilty, you are giving up your right to appeal from any conviction after trial, because there will be no trial.   Ordinarily, the only appeal from a guilty plea would be if I imposed an illegal sentence, or if there are any errors in this proceeding or the sentencing proceeding.   You have, however, entered into a plea agreement which does contain an appellate-waiver provision which is more narrow; generally, allowing a defense appeal only where the Government appeals or the Court imposes a sentence in excess of the statutory maximum, and if the Court imposes an upward departure or variance from the advisory Guideline range.   Now, do you understand those things?
>
> THE DEFENDANT:   Yes, sir.

(Id. at 13-14.)   Following our colloquy with Hlushmanuk, we found that he was competent to plead; that his plea was voluntary and not the result of force, threats, or promises apart from the Guilty Plea Agreement; that he understood the charges against him, his legal rights, and his maximum possible penalties; and that he understood that he was waiving his right to a trial on the charges.   (Id. at 26-27.)

In sum, both the Guilty Plea Agreement and our colloquy with Hlushmanuk demonstrate that Hlushmanuk was fully informed of his rights, the Government's obligations, and the nature of the appellate and collateral attack waiver. Furthermore, Hlushmanuk indicated by both his execution of the Guilty Plea Agreement and his responses to our questions at the guilty plea hearing that he had consulted with his attorney and understood the waiver. Therefore, we find that Hlushmanuk knowingly and voluntarily entered into the appellate and collateral attack waiver contained in the Guilty Plea Agreement, and we reject Hlushmanuk's argument to the contrary.[3]

**B.      Whether Enforcement of the Waiver Would Result in a Miscarriage of Justice**

Despite Hlushmanuk having knowingly and voluntarily waived his appellate and collateral attack rights and there being no applicable specific exception to the waiver, Hlushmanuk argues that he should be able to collaterally attack his conviction because he has meritorious claims that it would be a miscarriage of justice to bar him from raising. Specifically, as noted above, he contends that he did not knowingly and voluntarily plead guilty to conspiracy to commit health care fraud (Count 22) and health care fraud (Count 21), and that his counsel was ineffective in connection with his plea hearing.[4]

---

[3] In his Reply Brief, Hlushmanuk contends that his waiver was not knowing and voluntary because we did not "explain to him what is meant by collateral attack under [28 U.S.C. § 2255]." (Hlushmanuk Reply Br. at 9 ¶ 2.) However, as noted above, Hlushmanuk stated on the record at the guilty plea hearing that he had discussed the Guilty Plea Agreement fully with his attorney and did not have any unanswered questions regarding it. (2/5/13 N.T. at 6; see also id. at 14.) Thus, the record as a whole refutes any suggestion that he did not understand the meaning and import of the collateral attack waiver.

[4] These two claims are set forth in Grounds Two and Three of Hlushmanuk's § 2255 Motion. Ground Four of the Motion argues that Count 22 of the Indictment was defective. As Hlushmanuk makes this same argument in conjunction with his ineffectiveness claims in Ground Three, and we conclude in connection with those claims that Hlushmanuk has not established that Count 22 was defective, we do not separately address Ground Four. We ultimately conclude, however, that enforcement of the collateral attack waiver to preclude Hlushmanuk from raising the claim in Ground Four would not result in manifest injustice.

### 1.  Knowing and Voluntary Guilty Plea

Hlushmanuk argues that he did not knowingly and voluntarily plead guilty, because he did not fully understand the charges against him, the defenses that were available, and the consequences of his guilty plea.   We therefore consider whether his claims are such that it would be a miscarriage of justice to enforce the waiver.   See Wilson, 429 F.3d 458 (stating that it would constitute a miscarriage of justice to enforce a guilty plea that a defendant should be permitted to withdraw).

To comport with due process, a guilty plea "must be knowing, voluntary and intelligent." United States v. Tidwell, 521 F.3d 236, 251 (3d Cir. 2008) (citation omitted); see also Hill v. Lockhart, 474 U.S. 52, 56 (1985) ("The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (quotation and citations omitted)).   This requirement is embodied in Federal Rule of Criminal Procedure 11.   United States v. Schweitzer, 454 F.3d 197, 202 (3d Cir. 2006) (citing Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)).   Rule 11 requires the court to determine, among other things, that the defendant understands "the nature of each charge to which [he] is pleading," "the maximum possible penalty, including imprisonment, fine, and term of supervised release," and "the court's authority to order restitution."   Fed. R. Crim. P. 11(b)(1)(G), (H), and (K).   It also requires the court to determine "that there is a factual basis for the plea."   Fed. R. Crim. P. 11(b)(3).

At Hlushmanuk's guilty plea hearing, we not only ensured that the waiver of his appellate and collateral attack rights was knowing and voluntary, as detailed above, but we also ensured that his guilty plea itself was knowing and voluntary.   In that regard, we specifically advised him of the nature of the charges to which he was pleading guilty, the penalties he faced for those charges,

and our authority to order restitution.   (2/5/13 N.T. at 5-7, 15-16, 21-24.)   We also reviewed the

facts on which the guilty plea was based and concluded that there was a factual basis for the plea.

(Id. at 17-20, 26.)   At the conclusion of the hearing, we specifically found that Hlushmanuk

understood the charges, the maximum possible penalties that we could impose, and that he was

waiving his right to a trial on the charges against him.   (Id. at 26-27.)

   Hlushmanuk nevertheless contends that his guilty plea was not knowing and voluntary

because we misdescribed the elements of the offenses.   Specifically, Hlushmanuk contends that

he was erroneously advised that:   (1) the crime of conspiracy to commit health care fraud required

proof of one or more overt acts, when there is no such requirement,[5] and (2) the crime of health

care fraud did not require proof of a specific intent to defraud a healthcare benefit program, when it

does.[6]   Hlushmanuk   correctly   recounts   that   he   was   advised   that   the   fourth   element   of   the

---

[5] In his § 2255 Motion, Hlushmanuk inconsistently argues that the conspiracy count of the Indictment (Count 22) is defective because it does not set forth any overt acts.   In response to the Motion, however, the Government has pointed out that the relevant conspiracy statute, 18 U.S.C. § 1349, contains no overt act requirement and that the Third Circuit has stated that because the statute "'does not expressly require an overt act requirement . . . it likely contains none.'"   (Gov't Mem at 14 (citing 18 U.S.C. § 1349; and quoting United States v. Obaygbona, 556 F. App'x 161, 163-64 (3d Cir. 2014)).   In his reply brief, Hlushmanuk does not reiterate his argument that the Indictment is defective for failing to allege any overt acts and, thus, appears to accept the Government's assertion that there is no overt act requirement.   Instead, he advances the otherwise inconsistent argument that he was misadvised at the guilty plea hearing that the Government was required to prove an overt act in order to prove him guilty of conspiracy.   (See 2/5/13 N.T. at 16.) We therefore conclude that Hlushmanuk has abandoned his argument that Count 22 is defective for failing to allege any overt act.

[6] Hlushmanuk also argues that his plea to Count 21 was not knowing and voluntary because he was never advised of the elements of "aiding and abetting."   Count 21, in fact, charged that Hlushmanuk "knowingly and willfully executed . . . and aided and abetted the execution of, a scheme or artifice to defraud a health care benefit program" in violation of 18 U.S.C. § 1347, the health care fraud statute, and 18 U.S.C. § 2, the aiding and abetting statute.   (Indictment at 3, 6 (emphasis added)).   However, contrary to Hlushmanuk's understanding, he did not plead guilty to two separate crimes, healthcare fraud and aiding and abetting.   Rather, the federal aiding and abetting statute merely provides that one who "aids, abets, counsels, commands, induces or procures" the commission of a federal offense "is punishable as a principal."   18 U.S.C. § 2(a).

conspiracy charge was that "at some time during the existence of the conspiracy at least one of its members performed an overt act in order to further the objective of the agreement." (2/5/13 N.T., at 16.)  Moreover, we recognize that there is a question as to whether a conspiracy charge under § 1346 actually requires proof of this element.  See supra n. 5; see also Obaygbona, 556 F. App'x at 163-64 (declining to decide the issue of whether § 1346 contains an overt act requirement). However, even if there is no such requirement, Hlushmanuk does not elaborate on how his understanding that there was an overt act requirement rendered his admission of guilt to the conspiracy charge unknowing or involuntary.  Indeed, by admitting that he was guilty of a conspiracy charge that he understood to have four elements, Hlushmanuk necessarily admitted that he was guilty of a conspiracy charge that contained just three of the four enumerated elements. Thus, we find that inclusion of the overt act requirement, even if in error, had no impact on his plea.  See Khattak, 273 F.3d at 563 (requiring consideration of whether an error impacted the defendant in determining whether enforcement of an appellate waiver will result in a miscarriage of justice) (quoting Teeter, 257 F.3d at 25-26).  We thus conclude that there is no merit to Hlushmanuk's claim that inclusion of the overt act requirement rendered his guilty plea unknowing or involuntary.

We also find no merit in Hlushmanuk's assertion that his plea was unknowing or involuntary because he was not informed that health care fraud required proof of a specific intent to defraud a health benefit program.  Indeed, contrary to Hlushmanuk's assertion, he was specifically advised at the guilty plea hearing that health care fraud requires a specific intent to

---

Thus, by pleading guilty to health care fraud under 18 U.S.C. § 1327, Hlushmanuk negated any need for the Government to prove his guilt via the aiding and abetting statute.  Under these circumstances, Hlushmanuk did not plead guilty to aiding and abetting, and his guilty plea was not unknowing and/or involuntary by virtue of our failure to advise him of the elements of aiding and abetting.

defraud such a health benefit program.   (2/5/13 N.T. at 15 (stating that the first element of the crime of health care fraud "is that the Defendant knowingly executed or attempted to execute a scheme or artifice to defraud a health care benefit program, to obtain money or property under the custody of the health care fraud program by means of false or fraudulent pretenses, representations or promises" and that the third element is that he "acted willfully and intended to defraud.") Hlushmanuk emphasizes that the Assistant United States Attorney apparently misspoke in referencing a "health care fraud" program in connection with the first element, and contends that he therefore was misadvised of that element of the offense.   He does not contend, however, that he actually understood himself to be pleading guilty to a crime that involved taking money or property from a "health care fraud program" and indeed acknowledges that the Indictment charged him with using fraud to take money from a health care <u>benefit</u> program, i.e., Medicare.  (<u>See</u> Hlushmanuk Reply Br. at 9 ¶ 1; Indictment at 3.)   In addition, the facts of the offense laid out at the guilty plea hearing were that he defrauded Medicare, which is indisputably a health care benefit program.   (<u>See generally</u> 2/5/13 N.T. at 18-20.)   Accordingly, we find that Hlushmanuk was properly advised that Count 21 required proof that he had a specific intent to defraud a health care benefit program, and that any innocuous misstatement regarding a "health care fraud program" had no impact on his plea.   We therefore reject both of Hlushmanuk's claims that his plea was knowing and involuntary because we did not adequately explain the nature of the charges against him.

Hlushmanuk also argues that his guilty plea was not knowing and voluntary because we did not properly inform him of the consequences of his plea.   Specifically, he contends that he was not informed that he could be on supervised release for life or that his restitution judgment would impose a lien on his existing property as well as property he acquired in the future.

However, Hlushmanuk was <u>not</u> facing a lifetime of supervised release, and we correctly informed

him at the guilty plea hearing that he faced three-year terms of supervised release on each of the

Counts to which he was pleading guilty.   (2/5/13 N.T. at 21; 18 U.S.C. § 3583(b)(2) (providing

for "not more than three years" of supervised release for Class C felonies)).   Consistent with that

advice, we ultimately sentenced him to two concurrent three-year terms of supervised release, one

on each Count to which he pled guilty.   Thus, we find no merit in Hlushmanuk's argument that he

was misadvised of his potential supervised release penalty.   Likewise, Hlushmanuk was not

misinformed regarding the restitution because we correctly informed him at the plea hearing that

he was facing a restitution judgment of $5,443,315.72.   (2/5/13 N.T. at 21.)   While we did not

specifically advise him that the judgment could be converted to a lien against his property,

Hlushmanuk points to no authority that imposes an additional obligation to advise him as to the

methods by which the Government could enforce a restitution judgment, and we are aware of

none.[7]   We therefore conclude that there is no merit to either of Hlushmanuk's claims that his plea

was unknowing and involuntary because he was misadvised as to the penalties that he was facing.

Finally, Hlushmanuk contends that his guilty plea was unknowing and involuntary because

he was not advised that he had a valid defense to the charges against him, namely that he had no

legal responsibility for determining whether a patient's ambulance transport was "medically

necessary" and, thus, reimbursable under Medicare regulations. However, whether or not

Hlushmanuk bore responsibility for determining the medical necessity of a transport, or whether

---

[7] We also note that it would not be a miscarriage of justice to prohibit Hlushmanuk from independently raising his restitution argument in a § 2255 motion, because a § 2255 motion is not an available means by which to attack the restitution portion of a sentence.   <u>See</u> <u>United States v. Walker</u>, 149 F. App'x 55, 57 (3d Cir. 2005) ("[N]umerous courts have recognized that § 2255's language clearly and unambiguously limits its applicability to defendants seeking release from custody.   It is not available to those, like the defendant, who challenge only fines or restitution orders." (quotation omitted)).

he could have asserted lack of responsibility as a defense, he specifically admitted under oath at the guilty plea hearing that he lied about the medical necessity of the services that he provided, and that he intentionally defrauded Medicare by billing for ambulance transports that were not medically necessary.   (2/5/13 N.T. at 17 (admitting that the facts set forth in the Government's Change of Plea Memorandum were accurate); Change of Plea Mem. at 4 (stating that Hlushmanuk "lied about . . . the medical necessity of the services . . . provided"); id. at 7 (stating that testimony would establish that Hlushmanuk's company operated a scheme to defraud Medicare by "routinely provid[ing] and bill[ing] for ambulance transports that were not medically necessary").   As such, whether or not he himself was responsible for making a determination of medical necessity, he admitted under oath that he knew that transports were not medically necessary yet billed for them anyway.[8]   Under these circumstances, we do not find Hlushmanuk's argument that he should have been advised that he could defend the case by claiming to have no responsibility for the medical necessity determination to undermine his knowing and voluntary plea in any way.[9]

_____

[8] Hlushmanuk appears to suggest that he was entitled to rely on Certificates of Medical Necessity ("CMNs") that he received from medical providers for the individuals that STARCARE transported, which stated that ambulance transports were medically necessary, as long as the CMNs were not proven to be false and fraudulent.   (See Reply Br. at 3 ¶¶ 2-3; id. at 10 ¶ 8.) However, case law that the Government cited in the Guilty Plea Memorandum makes clear that "[p]ossession of a CMN—even one that is legitimately obtained – does not permit a provider to seek reimbursement for ambulance runs that are obviously not medically necessary." United States v. Read, 710 F.3d 219, 228 (5th Cir. 2012).   Accordingly, where, as here, Hlushmanuk admitted that he knew that the transports were not medically necessary, he cannot rely on any CMNs that he may have received to establish his innocence of the charges against him and the impropriety of his guilty plea.

[9] We also note that the charge of health care fraud in Count 21 was based not only on Hlushmanuk's misrepresentation of the medical necessity of the transport at issue, but also on the fact that he transported the patient in a minivan rather than an ambulance, when minivan transport is not reimbursable under Medicare regulations.   (See 2/5/13 N.T. at 20.)   Thus, for this additional reason, we reject Hlushmanuk's argument that he could have successfully defended against the charge of health care fraud solely by arguing that he was not responsible for determining the medical necessity of a patient's transport.

For the foregoing reasons, Hlushmanuk has failed to advance any meritorious claim that his guilty plea was unknowing and involuntary and, thus, has failed to establish that it would be a miscarriage of justice to enforce his collateral attack waiver to prohibit him from raising any such claim.   We therefore decline to find an exception to his collateral review waiver based on his claims of an unknowing and involuntary guilty plea.

### 2.   Ineffective Assistance of Counsel

Hlushmanuk argues that he was denied his Sixth Amendment Right to Counsel in connection with his guilty plea hearing.   We therefore consider whether it would be a miscarriage of justice to enforce the waiver in the face of these claims.   See Shedrick, 493 F.3d at 298 ("Enforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [the defendant] from understanding his plea . . . would result in a miscarriage of justice."); United States v. Akbar, 181 F. App'x 283, 287 (3d Cir. 2006) (stating that "it is possible for there to be a miscarriage of justice when plea proceedings are tainted by ineffective assistance of counsel.").

In order to prevail on a claim for ineffective assistance of counsel, a criminal defendant must demonstrate both that:   (1) his attorney's performance was deficient, i.e., that the performance was unreasonable under prevailing professional standards, and (2) he was prejudiced by the attorney's performance.   Strickland v. Washington, 466 U.S. 668, 687-88 (1984).   An attorney's performance is deficient if it falls "below an objective standard of reasonableness."   Id. at 688.   Prejudice from counsel's ineffectiveness is proven if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   Id. at 694.   Where, as here, a defendant challenges a guilty plea based on counsel's ineffective assistance, prejudice is only established if the defendant shows that "there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[10]   Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### a.   Speedy Trial Act Violation

Hlushmanuk argues that counsel was ineffective in failing to move to dismiss the Indictment for violation of the Speedy Trial Act, which requires a defendant's trial to begin within seventy days after he is charged or makes an initial appearance in his criminal case, whichever date is later.   See 18 U.S.C. § 3161.   Hlushmanuk made his initial appearance in this case on June 29, 2012, and did not plead guilty until 222 days later, on February 5, 2013.   Hlushmanuk concedes that we may exclude from the 70-day calculation any "delay resulting from . . . proceedings concerning the defendant," as well as any delay resulting from continuances for which we have made finding that the "ends of justice" are served by taking such action "outweigh the best interest of the public and the defendant in a speedy trial."   18 U.S.C. §§ 3161(h)(1), (7).   However, he contends that, in addition to delays that were properly excludable under these statutory provisions, there were delays that we justified only by stating that he had prospectively waived his Speedy Trial rights.   Hlushmanuk observes that the United States Supreme Court has held that "a defendant may not prospectively waive the application of the [Speedy Trial] Act," and thus contends that we could not exclude time justified only by his prospective waiver.   Zedner v. United States, 547 U.S. 489, 503 (2006).   He therefore contends that his counsel should have moved to dismiss the Indictment based on a violation of the Speedy Trial Act.

---

[10]   Hlushmanuk does not explicitly argue that, in the absence of his counsel's ineffectiveness, he would not have pleaded guilty and instead would have insisted on going to trial.   We could therefore reject his ineffectiveness claims this basis alone, and therefore conclude that it is not a miscarriage of justice to find those ineffectiveness claims to be waived. However, given that Hlushmanuk is proceeding *pro se*, we will liberally interpret his ineffectiveness arguments to assert that, but for counsel's ineffectiveness, Hlushmanuk would not have pled guilty but, rather, would have disputed the charges against him.   We therefore consider the merits of all of his ineffectiveness claims in our miscarriage of justice analysis.

Contrary to Hlushmanuk's argument, however, we did not, at any time, delay the trial based only on his prospective waiver of his Speedy Trial rights.   On August 4, 2012, thirty-six days after his initial appearance, Hlushmanuk filed a motion to continue the trial date, which tolled the Speedy Trial clock until we granted the motion at a hearing on August 22, 2012.   See 18 U.S.C. § 3161(h)(1)(D) (excluding delays from the filing of any pretrial motion through the disposition of the motion).   At the hearing, we set a new trial date of November 5, 2012, and specifically found that this additional delay was excludable time under the Speedy Trial Act because it was necessary to afford Hlushmanuk and the Government adequate time to explore a non-trial resolution of the case or otherwise prepare for trial.   (See 8/22/12 Order; 18 U.S.C. §§ 3161(h)(7)(A), (B)(iv).)   Thereafter, at an October 9, 2012 hearing, Hlushmanuk orally moved for another continuance.   (See 10/9/12 Order)   We granted that motion, setting a new trial date of December 10, 2012, and again concluding that any delay attributable to the continuance was excludable because it served the ends of justice insofar as it was necessary for the parties to explore a non-trial resolution or otherwise prepare for trial.   (Id.; 18 U.S.C. §§ 3161(h)(7)(A), (B)(iv).)   Approximately one month later, on November 1, 2012, new counsel entered his appearance on Hlushmanuk's behalf, and Hlushmanuk moved for a third continuance one week later.   We granted that motion on November 14, 2012, finding yet again that the ends of justice justified the continuance while Hlushmanuk and the Government pursued a non-trial resolution or otherwise prepared for trial.   (11/14/12 Order.)   We set a new trial date of February 11, 2013, but Hlushmanuk pled guilty on February 3, 2012, negating the need for a trial.   (Id. )

Pursuant to this timeline, just thirty-six days elapsed on the Speedy Trial clock before Hlushmanuk pled guilty, because all other delays were statutorily excluded.   Although Hlushmanuk also stated on the record on both August 22, 2012 and October 9, 2012, that he was

waiving his Speedy Trial rights, we did not rely upon these "prospective waivers" in excluding the subsequent delays from our Speedy Trial calculations.   Accordingly, there were no Speedy Trial violations and counsel could not have been ineffective in failing to move to dismiss the Indictment for such violations.   There is therefore no miscarriage of justice in barring Hlushmanuk from raising his ineffectiveness claim grounded on purported Speedy Trial violations.

### b.      Defectiveness of Counts 21 and 22 of the Indictment

Hlushmanuk claims that his counsel provided ineffective assistance by failing to challenge Counts 21 and 22 of the Indictment as defective.   His claim with respect to Count 21 is similar to that which he made in connection with his claim that his guilty plea was not knowing and voluntary, i.e., he argues that counsel should have argued that Count 21 is defective because it failed to allege that he had a specific intent to defraud.   With respect to Count 22, he argues that the Indictment is defective for failing to identify his co-conspirators.[11]

As a general matter, Federal Rule of Criminal Procedure 7 requires an indictment to provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "[A]n indictment is facially sufficient if it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012) (quoting United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007)).   Federal Rule of Criminal Procedure 12(b)(3) authorizes a defendant to challenge to the sufficiency of an indictment where the indictment "'fails to charge an essential element of the crime.'"   United States v. Stock, 728 F.3d 287, 292 (3d Cir. 2013) (quoting United

---

[11]    As noted above, see supra n.5, Hlushmanuk initially argued that Count 22 was also defective for failing to allege any overt acts, but he has since abandoned that argument.

States v. Huet, 665 F.3d at 595; Fed. R. Crim. P. 12(b)(3)(B) (stating that a court may, "at any time while [a] case is pending, . . . hear a claim that the indictment . . . fails . . . to state an offense").

Hlushmanuk's assertion that Count 21 of the Indictment is defective because it fails to allege a specific intent to defraud is meritless because the Indictment clearly alleges that Hlushmanuk "knowingly and willfully executed . . . a scheme or artifice to defraud a health care benefit program."   (Indictment ¶ 7.)   Similarly, his assertion that Count 22 is defective for failing to identify Hlushmanuk's co-conspirators is meritless, because a conspiracy count need not name a defendant's co-conspirators.   See Rogers v. United States, 340 U.S. 367, 375 (1951) ("[A]t least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown.").

Because neither claim of a defective Indictment has merit, Hlushmanuk's claim that counsel was ineffective for failing to challenge the sufficiency of the Indictment based on the alleged defects is meritless as well.   See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." (citations omitted)); see also Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998).   There is therefore no miscarriage of justice in barring Hlushmanuk from raising this claim.   Akbar, 181 F. App'x at 287 ("[A] waiver does not 'become[ ] unenforceable simply because a defendant claims . . . ineffective assistance,' but only 'if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious.'" (quoting United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004))).

### c.      Failure to Investigate and Challenge Guilt

Hlushmanuk argues that counsel was ineffective for failing "to investigate the charges against [him] where discovery clearly showed that others were more culpable than [he] and had motivation to lie as to the extent of [his] involvement in the alleged crimes."   (§ 2255 Mot. at 9.) In a related claim, he asserts that counsel was ineffective in coaching him to plead guilty when he is "actually innocent."   (Id.)   Hlushmanuk has not, however, identified any specific, new evidence that counsel would have discovered in an investigation, much less any evidence that demonstrates that he is actually innocent of the charges to which he pled guilty.   Moreover, as explained above, his claim of innocence is directly contradicted by his knowing and voluntary guilty plea.   (See supra at 8-14.)   Accordingly, he has failed to establish that his counsel's performance was deficient in failing to conduct a more thorough investigation or in counseling him to plead guilty, and has likewise failed to establish that, but for counsel's performance, he would not have pled guilty.   See Strickland, 466 U.S. at 687-88.   We therefore reject his claim that his counsel was ineffective in these regards and find no manifest injustice in enforcing the waiver to prohibit his pursuit of these claims.

### d.      Supervised Release and Restitution

Mirroring his claim that his guilty plea was unknowing and involuntary due to misinformation about his supervised release and restitution, Hlushmanuk argues that his counsel was ineffective for failing to advise him that he could be placed on supervised release for life and that his restitution judgment could be converted into a lien that could extend beyond his imprisonment and supervision.   However, as explained above, Hlushmanuk was properly advised that his maximum term of supervised release was three years, and he was further advised as to the amount of his expected restitution judgment.   Furthermore, Hlushmanuk cites no caselaw – and

we are aware of none – that would support a conclusion that a defendant's Sixth Amendment right to counsel is violated when an attorney does not advise a defendant that his restitution judgment could be converted to a lien.   We therefore conclude that Hlushmanuk has failed to establish that counsel's performance was deficient in failing to properly advise him about supervised release and the restitution consequences of his plea, and we find no manifest injustice in enforcing the waiver to prohibit his pursuit of these claims.

In sum, we find no merit in any of Hlushmanuk's ineffectiveness claims,[12] and we therefore decline to find any manifest injustice in barring him from raising those claims on collateral review.

## V.        CONCLUSION

For the foregoing reasons, we conclude that Hlushmanuk knowingly and voluntarily waived his appellate and collateral attack rights, that no specific exception to that waiver is applicable, and that there will be no manifest in justice in enforcing that waiver to prohibit Hlushmanuk from bringing the claims he sets forth in his § 2255 Motion.   We therefore conclude that Hlushmanuk's waiver of his right to collaterally attack his sentence is enforceable.

---

[12] Hlushmanuk also contends that counsel was ineffective for failing to file a direct appeal. However, as explained above, Hlushmanuk entered into an appellate waiver in this case, and that waiver was knowing and voluntary.   In light of the waiver, and in the absence of any specific exception to the waiver or a miscarriage of justice arising out of its enforcement, counsel simply could not be found ineffective for failing to file an appeal.

Accordingly, we grant the Government's Motion to Dismiss, and we dismiss Hlushmanuk's §

2255 Motion.[13]   An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.

---

[13] Hlushmanuk requested that we hold an evidentiary hearing in the event that we did not grant his § 2255 Motion outright.   However, we need not hold an evidentiary hearing where "the motion and files and records of the case show conclusively that the movant is not entitled to relief." United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 3005) (quotation omitted).   As that is the situation here, we conclude that no evidentiary hearing is required.